UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JEREMY JONES,**

    **Plaintiff,**

v.                                         **Case No. 8:22-cv-231-AAS**

**OFFICER DAVID CEINSKI, JR.,**
**in his individual capacity,**

    **Defendants.**
_____/

## ORDER

    Defendant Officer David Ceinski, Jr. (Deputy Ceinski), in his individual capacity, moves for summary judgment on Plaintiff Jeremy Jones's claim of excessive force. (Doc. 40). For the reasons stated below, Deputy Ceinski's motion for summary judgment is **GRANTED**.

### I. INTRODUCTION

    This case arises out of a traffic stop and Deputy Ceinski's alleged use of excessive force on Mr. Jones on August 8, 2020 by Deputy Ceinski. On January 22, 2022, Mr. Jones filed his complaint against Deputy Ceinski under 42 U.S.C. § 1983. (Doc. 1). On March 30, 2023, Deputy Ceinski moved for summary judgment based on qualified immunity. (Doc. 40). Mr. Jones filed a response to Deputy Ceinski's motion on April 14, 2023 (Doc. 51), to which Mr. Jones replied

1

on April 48, 2023 (Doc. 52).

After carefully considering the parties' legal memoranda and evidentiary submissions, the court concludes Deputy Ceinski is entitled to qualified immunity. Thus, summary judgment is granted in favor of Deputy Ceinski on Mr. Jones's civil rights claim of excessive force.

## II. BACKGROUND[1]

Mr. Jones sued Deputy Ceinski, in his individual capacity under 42 U.S.C. § 1983, for an alleged violation of Mr. Jones's rights under the Fourth Amendment to the United States Constitution. (Doc. 1). Deputy Ceinski moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and argues he is protected by qualified immunity. (Doc. 40).

On August 8, 2020, at approximately 11:20 p.m., Mr. Jones was driving a 1998 Mercury Marquis northbound on Gateway Drive in Sarasota, Florida, and turned left onto Gulf Gate Boulevard. (Doc. 1, ¶ 7; Doc. 41, p. 7; Doc. 50, p. 9). John Thomas was riding in Mr. Jones's front passenger seat. (Doc. 41, p. 12). While Mr. Jones was driving, Mr. Thomas's passenger side door opened. (Doc. 1, ¶ 8).

---

[1] The background contains undisputed facts and "[a]ll issues of material fact are resolved in favor of the plaintiff." *See Sparks v. Ingle*, 724 F. App'x 692, 693 (11th Cir. 2018) (citation omitted).

2

Deputy Ceinski was on duty and parked in his Sheriff's vehicle when he observed the passenger side door of Mr. Jones's vehicle open while in transit. (Doc. 50, p. 11). Deputy Ceinski then activated his overhead lights and pursued Mr. Jones's vehicle to conduct a traffic stop. (Doc. 41, p. 11; Doc. 50, p. 17). Mr. Jones pulled into a restaurant parking lot and Deputy Ceinski pulled in behind Mr. Jones's vehicle. (Doc. 41, p. 11; Doc. 50, p. 21).

Deputy Ceinski approached Mr. Jones's vehicle and advised he was conducting a traffic stop and to stay inside the vehicle. (Doc. 50, p. 26). Mr. Jones and Mr. Thomas complied. (Doc. 41, p. 12). After Deputy Ceinski reached Mr. Jones's vehicle, Deputy Ceinski instructed Mr. Jones to step out of the vehicle. (*Id.*, pp. 12–13). Mr. Jones complied. (*Id.*). Deputy Ceinski then asked Mr. Jones for his license and registration and whether there were any weapons in the vehicle. (*Id.*). Mr. Jones answered in the affirmative and gave Deputy Ceinski his driver's license, registration, and a concealed carry gun permit. (*Id.*, p. 14). Mr. Jones testified once Deputy Ceinski learned of the weapon and found a handgun under the driver's seat, Deputy Ceinski "got hostile." (*Id.*, pp. 15–16).

Mr. Jones testified Deputy Ceinski grabbed him around the neck and pulled him backwards against the vehicle. (*Id.*, pp. 17–18). Mr. Jones testified

this manual force had the effect of "choking [him]." (*Id.*, p. 17). Mr. Jones testified Deputy Ceinski also struck Mr. Jones on top of his head with a closed fist and pulled Mr. Jones's left arm behind his back. (*Id.*, pp. 26–29). Deputy Ceinski then radioed in the traffic stop and requested backup. (Doc. 45, p. 3; Doc. 44, p. 4; Doc. 50, p. 50).

The first backup deputy, Michael Celius (Deputy Celius), arrived at the scene and observed Deputy Ceinski standing outside the driver side of Mr. Jones's vehicle, with Mr. Jones and Mr. Thomas standing outside the passenger side of the vehicle. (Doc. 45, pp. 4–5; Doc. 48, p. 17). All physical contact ceased, and the gun was removed from Mr. Jones's proximity before Deputy Celius arrived. (Doc. 45, pp. 4–5; Doc. 48, p. 17; Doc. 50, p. 82). Deputy Jonathan Brusoe (Deputy Brusoe) then arrived at the scene, followed by Lieutenant Michael Dumer (Lt. Dumer). (Doc. 44, p. 4; Doc. 43, pp. 4–5; Doc. 48, p. 17).

Lt. Dumer investigated the incident and spoke with Mr. Jones, Mr. Thomas, and other witnesses. (Doc. 43, pp. 9–11). Lt. Dumer ordered an ambulance to be called because Mr. Jones was complaining of "not feeling well." (*Id.*, p. 13). Charles Reynolds and Zachariah Barkema of the Sarasota County Fire Department responded to the scene after getting a call at approximately

4

11:30 p.m. (Doc. 46, p. 3; Doc. 47, p. 3). Mr. Jones complained to Mr. Reynolds about neck pain. (Doc. 46, pp. 3–4). Mr. Reynolds evaluated Mr. Jones and observed no visible injuries or bruising in the neck area. (*Id.*, p. 4). Mr. Jones testified he is "permanently handicapped," suffering from "osteoporosis and has severe congenital deformity of his hands." (Doc. 51, p. 5l; Doc. 49, p. 1). Mr. Jones received medical treatment at Sarasota Memorial Hospital, including a wrap on one of his wrists. (*Id.*, p. 26).

### III.  SUMMARY JUDGMENT STANDARD

Granting a motion for summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party meets this burden, "[t]he burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether Deputy Ceinski is entitled to summary judgment based on qualified immunity, the court is to "resolve all issues of material fact in favor of the plaintiff." *Oliver v. Fiorino*, 586 F.3d 898, 901 (11th Cir. 2009). However, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## IV. ANALYSIS OF QUALIFIED IMMUNITY

Mr. Jones claims Deputy Ceinski violated his Fourth Amendment right to be free from the use of excessive force. (Doc. 1). If Deputy Ceinski is entitled to qualified immunity, Mr. Jones cannot prevail on his excessive force claim.

The Fourth Amendment provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Section 1983 provides a cause of action for individuals to seek redress for constitutional violations committed by a defendant while acting under color of state law. 42 U.S.C. § 1983. Acts

6

performed by law enforcement officers are considered performed under color of state law. *West v. Atkins*, 487 U.S. 49, 49–50 (1988).

To avoid individual liability, a defendant may invoke the defense of qualified immunity. The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Since the purpose of the doctrine is to "allow government officials to carry out their discretionary duties without fear of personal liability," *Steen v. City of Pensacola*, 809 F. Supp. 2d 1342, 1348 (N.D. Fla. 2011), qualified immunity protects all government actors except the plainly incompetent and those who knowingly violate federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "'[G]overnment officials are not required to err on the side of caution,' [and] qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." *Id.* at 1200 (quotation omitted).

In resolving the matter of qualified immunity, the court employs a multi-step, burden-shifting analysis. As an initial matter, the public official has the

7

burden to "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010) (quoting *Lee*, 284 F.3d at 1194). To deny the government official qualified immunity, a plaintiff must prove that the "official's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rioux v. City of Atlanta*, 520 F.3d 1269, 1282 (11th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The first question the plaintiff must address is whether the facts, viewed in the light most favorable to Mr. Jones, demonstrate Deputy Ceinski's conduct violated Mr. Jones's constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If there was no violation, the inquiry ends, and Deputy Ceinski is entitled to qualified immunity; if there was a violation, the next question the plaintiff must address is whether the violated right was clearly established at the time of the violation. *See id.*; *see also Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

When determining whether a constitutional right was "clearly established," a court's inquiry is limited to the law at the time of the incident. *Harlow*, 457 U.S. at 818. A plaintiff can show that a constitutional right was

8

clearly established in three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted).

Although the Eleventh Circuit recognizes methods (2) and (3), the Supreme Court warns not to "define clearly established law at a high level of generality" and so these are rarely invoked. *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "[I]f a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question" or "with obvious clarity to the circumstances." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

### A. Deputy Ceinski's traffic stop of Mr. Jones was within his discretionary authority as a Sherriff's deputy.

Section 1983 provides a cause of action for individuals for constitutional violations committed by a defendant while acting "under color of state law." 42 U.S.C. § 1983; *see also Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) ("[T]o prevail on a civil rights action under § 1983, a plaintiff must

show that he or she was deprived of a federal right by a person acting under color of state law."). Acts performed by law enforcement officers while on duty are generally considered performed "under color of law." *West v. Atkins*, 487 U.S. 49, 49–50 (1988); *see also Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265–66 (11th Cir. 2012) ("A defendant acts under color of state law when [he] deprives the plaintiff of a right through the exercise of authority that [he] has by virtue of [his] government office or position.").

"'A government official acts within [his] discretionary authority if the actions were (1) undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority.'" *Jones v. City of Atlanta*, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam) (quoting *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). Both parties agree that conducting a traffic stop falls within the discretionary duties of a law enforcement officer. Mr. Jones does not dispute Deputy Ceinski was on-duty and working as a law enforcement officer with the Sarasota County Sheriff's Office at the time of the incident. Because Deputy Ceinski was acting within his discretionary authority, the burden shifts to Mr. Jones to prove whether Deputy Ceinski used excessive force in violation of a clearly established law. *See Pearson*, 555 U.S. 223, 232 (2009).

### B. Deputy Ceinski did not use excessive force.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197 (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The court must first determine whether Deputy Ceinski used excessive force when he placed a two arm hold around Mr. Jones's neck, implemented a one arm wrist lock, and struck the top of Mr. Jones's head.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396–97. "Traffic stops are especially fraught with danger to police officers, but the risk of harm to both the police and vehicle occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Arizona v. Johnson*, 555 U.S. 323, 330 (2009).

The test of reasonableness under the Fourth Amendment requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490

11

U.S. at 396–97. The court explained:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight .... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* (internal citations and quotations omitted).

An individual near a vehicle where a weapon could be accessed during a traffic stop is considered an immediate threat to officer safety, authorizing the use of force to prevent such access. *See Edwards v. Monmany*, No. 2:19-CV-711-SPC-NPM, 2023 WL 145011, at *3 (M.D. Fla. Jan. 10, 2023); *see also Baxter v. Roberts*, 54 F.4th 1241 (11th Cir. 2022); *Myers v. Bowman*, 713 F.3d 1319, 1327–28 (11th Cir. 2013). It is undisputed a handgun was in the front seat area of Mr. Jones's vehicle. The presence of that weapon authorized Deputy Ceinski to use some force to prevent access to the weapon. *See Bolt v. Losa*, No. 09-60963-CV, 2010 WL 5538720, at *12 (S.D. Fla. Dec. 6, 2010); *see also Moore v. Gwinnett Cnty.*, 967 F.2d 1495, 1498 (11th Cir. 1992).

Mr. Jones testified he is "permanently handicapped," suffering from

"osteoporosis and has severe congenital deformity of his hands." (Doc. 51, p. 5l; Doc. 49, p. 1). Mr. Jones testified Mr. Thomas repeatedly screamed this information at Deputy Ceinski during the physical altercation. (Doc. 49, p. 2). However, no evidence demonstrates Mr. Jones is incapable of retrieving and using a handgun. Indeed, Mr. Jones's had a permit for the handgun in his vehicle. Mr. Jones is also able to operate a vehicle without apparent limitation.

Although Mr. Jones was pulled over for a minor traffic violation, this does not undermine Deputy Ceinski's entitlement to qualified immunity. Even for "minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." *Brown*, 608 F.3d at 740. In any event, the nature of the offense did not prompt Deputy Ceinski's use of manual force, Mr. Jones's access to a handgun in his vehicle presented an imminent threat of harm. (Doc. 51, p. 4; Doc. 40, p. 6). "[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Btesh v. City of Maitland, Fla.*, No. 6:10-CV-71-ORL-19DAB, 2011 WL 3269647, at *22 (M.D. Fla. July 29, 2011) (citations omitted).

Mr. Jones suffered only minor injuries from the incident. After being transported to the hospital, Mr. Jones was released with a wrap on one wrist.

13

(Doc. 41, p. 26). The paramedics on scene received complaints from Mr. Jones only about his neck and no visible injuries were evident. (Doc. 46, p. 4).

"The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no, or merely minor, medical treatment is not a constitutional violation, even where the [detainee] was restrained and no further force was necessary." *Perez v. Wicker*, No. 2:14-CV-558-FTM-29CM, 2016 WL 3543502, at *4 (M.D. Fla. June 29, 2016) (citing *Jones v. City of Dothan*, 121 F.3d 1456, 1460–61 (11th Cir. 1997)). An officer's use of *de minimis* force to effectuate a lawful arrest does not constitute excessive force. *Taylor v. Taylor*, 649 F. App'x 737, 746–47 (11th Cir. 2016) (holding deputy's use of force during arrest was not excessive where he grabbed the plaintiff, slammed her into the side of the patrol vehicle, and handcuffed her, fracturing her hand and forearm); *Woodruff v. City of Trussville*, 434 F. App'x 852, 855 (11th Cir. 2011) (holding officers were entitled to qualified immunity where officers forcefully removed the plaintiff from car and threw him to the pavement, causing him to strike his head); *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (holding officer was entitled to qualified immunity where he grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van, kneed him in the back, and pushed his head into side of van).

The undisputed facts demonstrate no excessive use of force by Deputy Ceinski and thus Deputy Ceinski is entitled to qualified immunity, which bars Mr. Jones's Section 1983 claim as a matter of law.

### C. Even if Deputy Ceinski's force was excessive, the level of force did not violate clearly established law.

Even if Deputy Ceinski's conduct violated Mr. Jones's rights against the use of excessive force, Mr. Jones failed to establish Deputy Ceinski's use of force violated any "clearly established" law. As discussed above, Mr. Jones has the burden to demonstrate that Deputy Ceinski violated a constitutional right that was clearly established at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Mr. Jones argues Deputy Ceinski violated a clearly established law requiring "force must stop when the need for it no longer exists." (Doc. 51, pp. 6–7). However, Deputy Ceinski's use of manual force stopped when Mr. Jones's access to the handgun was removed, backup arrived, and the threat to Deputy Ceinski's personal safety subsided.

Mr. Jones has not cited any cases analogous to the facts here. Instead, the facts of this case are like those the above-cited Eleventh Circuit cases in which the defendants' actions did not violate the Constitution. Thus, Deputy Ceinski did not violate a right that was clearly established at the time of

15

alleged the violation.

## V. CONCLUSION

Accordingly, it is **ORDERED**:

1. Deputy Ceinski's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment for Deputy Ceinski and against Mr. Jones, and Deputy Ceinski is entitled to costs.

3. The Clerk is **DIRECTED** to close the case.

**ENTERED** in Tampa, Florida on May 30, 2023.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

16